Good morning, Your Honors. My name is Emily Wood. I'm from the Office of the State Appellate Defender on behalf of William Kenlow. Good morning, Your Honors. My name is Claire Wessler Connelly. I'm an Assistant State's Attorney and I represent the people of the State of Illinois in this case. Thank you. Remember, this is a recording device. It's not really a microphone, so modulate your voice accordingly. May it please the Court, today I'd like to cover my ineffective assistance of counsel argument, specifically with respect to counsel's failure to request the withdrawal instruction and his failure to professionally handle the late discovery tendered by the State. I'd also like to cover just a few points under my prosecutorial misconduct section of the brief. This case is about a 22-year-old college student with no violent past who got caught up in the botched robbery of Lionel Reed. It's a robbery he did not want to participate in and he communicated as such to his co-defendants Burns and Davis. He also tried to prevent the commission of the offense by depriving co-defendant Burns with crucial physical assistance. Counsel, let me understand this. He went to the location where he knew this robbery was going to take place. He was engaged in the planning of the robbery earlier in the day. How can you say he didn't want to participate in this and he was caught up in it? There are a lot of steps to get to where he was, where the robbery actually occurred. Isn't that so? Sure. And our argument is that the evidence goes both ways. The jury certainly considered evidence that he did help plan, but the jury also heard evidence that he refused to help plan. And it was up to the jury to weigh exactly what he did. And the only way that they could effectively do that is if they were given the withdrawal instruction. So when he refused to help plan, so what was he doing at the scene of the robbery? Was he just there as a spectator? I mean, when you say he refused to help plan, but he went to the scene of the robbery with the knowledge that a robbery was going to take place and he had seen the gun earlier. I mean, he knew everything that was going to happen. How can you say he was caught up and he refused to take place? I mean, what constitutes the refusal? Let's get to that. Well, throughout the afternoon when Davis first came over to his house, he refused to call Reed as requested by Davis. He refused to help plan the robbery in terms of mapping out exactly what Davis should do. He also refused to get out of the car when Codefendant Burns said, hey, what are you doing here if you're not going to get out and go help rob him? When he finally did get out of the car, he was supposed to not only create a diversion, but also provide crucial physical assistance because Davis had a gunshot wound to his left shoulder. William was needed to get in there and physically remove any material goods that they wanted to take. And instead, what he did was hand the money to Davis and simply walk away. So simply because he deviated from the plan, as the state points out in their brief, he deviated from the plan. He didn't do exactly what it was that he had agreed, but he did something to create a diversion. How is that withdrawing from participation? Well, what William is required is to present some or even slight evidence of withdrawal. And our argument is that the evidence that the jury heard was sufficient to at least present the jury with that instruction. Tell me specifically why, because I'm having trouble with that, Counsel. I have to be honest. You know, granted, he disagreed with the instruction, but he did something to create a diversion. He disagreed with the plan, but he offered one of his own. And, you know, he disagreed with the plan, but still participated in the planning, sat there, talked with them, rode in the car with Latrice Burns to the event, created a diversion, all being a different one from what was agreed upon. But tell me, what constitutes the withdrawal that you're talking about? Well, according to William's statement, the crime was not even in progress until he had walked away. And what was supposed to happen was that he was supposed to help instigate the crime. He was supposed to get in the car, talk to Reed, completely distract him, and then Davis was going to pull the gun and William was going to go through his pockets and they were going to maybe even take the car. Instead, what had happened was William said he walked over there, he gave him the money, and he walked away. The crime had not even begun yet. He looked back, he saw Davis pull the gun, a tussling ensued, and then the shot was fired. So he wasn't even there when the crime had started. And our argument is that that's sufficient for the jury to consider whether by depriving Davis of the grand distraction and the physical assistance that he needed, whether that was enough to make efforts to prevent the commission of the crime. And again, all William was required to do is summarize even slight evidence. And our argument is that that is enough had defense counsel requested it. What specifically is the slight evidence? The giving him the $10 instead of getting into the car? What exactly? It's walking away instead of providing the physical assistance. What did he do after he walked away? Let's go to the next step. Wasn't there a point in time when he took the gun that was used and hit it? Right, but that's after the commission of the offense. Well, hey, in for a penny, in for a pound. You know, the state's entire theory of the case was accountability, correct? Sure. And he was there, he was present at the scene. He knew that his co-defendant had a gun. Right. He knew that the gun had a bullet. Right. Hey, how much more do we need here? Well, and that is all for the jury to consider. And they did consider it. But the problem here is that defense counsel, while he argued that the facts basically supported a withdrawal instruction or consideration of withdrawal, he never asked for the instructions. There's a good chance the trial court would have granted it, but the main issue here is that defense counsel never asked. Defense counsel argued it, but it basically was an argument without teeth, because the jury had nowhere to go with this information. He had nowhere to go with defense counsel's argument that withdrawal basically could release him from liability under the accountability. Counsel, do you rely on the Pegram case? Yes. Now, aren't the facts greatly different than what the situation is here? Yes. So maybe counsel knew that the Pegram facts were so different, so why would they even ask for that? Well, it's still a relevant example of when the facts support a jury instruction and defense counsel just lets it go and doesn't even bother to ask. It's a relevant example of ineffective assistance of counsel. And here, it's not enough for defense counsel to simply argue that, hey, he disassociated himself from the crime. The jury couldn't do anything. And as the state points out in their closing argument, even if William had just sat in the car and didn't go to the car where Davis was and Reed was sitting, he's still guilty under accountability and felony murder. The only thing that can release him is if the jury was able to consider this withdrawal instruction. And defense counsel argued for it, but never asked for the instruction. And that's the critical point here, is that there's a good chance, based on the evidence that the trial court would have given the instruction, had defense counsel asked instead of asking, he simply just argued it. Counsel, is there a difference between his full participation in the original scenario, I guess we want to call it, and his communication of his withdrawal? Well, and certainly our argument is that the evidence supports communication all along the way, that he did not want to participate. He refused to plan, he refused to call, he refused to provide the physical assistance. All of those are communications of his intent to withdraw from this crime. I mean, he even said at one point to Davis, this is your thing, this is not my thing. But his actions, by staying in the car, staying there, hiding the gun, taking the money, is that evidence of withdrawal? Well, it's certainly something that the jury could consider, absolutely. But again, all that's required is some or even slight evidence to support giving the instruction. And that's the problem here, is that defense counsel argued it, the facts supported it, never asked for the instruction. And that was unprofessional. Without the full set of instructions, the jury just didn't have really a full idea of what they could decide based on the facts. And it deprived William of a fair trial. Another example of counsel's ineffective assistance was his unprofessional handling of the late discovery tendered by the state. And this happened long after discovery was complete. The state presented phone records, phone records that for the first time linked William's phone to read. Defense counsel does not object, he does not review the records, and he doesn't even review the stipulation. He just blindly signs. The phone records were available, defense counsel could have sought the phone records in the same way the state did, albeit the state claimed they got them on a Friday before the trial was to start. But defense counsel, that was his client. Does he have some responsibility to find every single record that may help in some way exonerate his client? You know, is it the state's responsibility to find the records and then hand them over to defense counsel? Or does defense counsel have some responsibility to find records that may help his own client? I mean, it's the state's burden of proof all along the way. So it's the state's burden to present any evidence that they intend to use against William. Absolutely, but it's also defense, the defense has a responsibility to prepare his best defense. Absolutely. And prepare for trial. And wouldn't that entail, since there was talk about the telephone, everyone knew that the perpetrators had called the shoeman on somebody's telephone. You know, would it be good practice to get the records yourself and see what that showed? Well, and perhaps so, and that further highlights my point that defense counsel really just dropped the ball in an unprofessional manner with respect to the phone records completely. I mean, again, as your Honor pointed out, if he had a duty to actively seek these phone records on the day, he clearly did not. He was clearly surprised when the state handed these records to him. Didn't bother to read them, only went on what he understood. I think two different approaches for the same argument. It was prosecutorial misconduct for the state not to have given the records. But it was also ineffective assistance of counsel for defense counsel not to have gotten the records himself. Right. And the prejudice is really in two points. One is that we don't know what the trial court would have done in terms of a remedy. Even if defense counsel had asked for a continuation brief, brief passing of the case, he could have taken the time to prepare a response to this new evidence. But counsel, for a minute now, let's talk about that. Let's say he did take a day or five minutes or whatever it took to review those records. If he wouldn't stipulate to them, wouldn't the state just call a foundation witness? Sure. And we're not saying that ultimately it would not have come in. Although certainly it would have been up to the trial court to use that as a sanction. If the trial court had determined that it was a discovery violation. But it would have allowed defense counsel to address the point. I mean, basically as it stood, because defense counsel was left stunned with this new evidence, did not respond to it at all, the state was free to argue that William volunteered his phone. There was no proof of that. Of course the state is free to argue that as an interpretation of the fact. Defense counsel left it completely unanswered. The facts support that there was an answer available. We know from the phone records that the call was made at 212 p.m. Well, at that time. Is that true you say defense counsel left it completely unanswered? Is that true? I mean, the testimony was that he refused and the jury heard this. The defendant refused to make the call himself. So that testimony answers what you're talking about. And the jury did hear that testimony. So I'm not sure what you mean by completely unanswered. Well, it certainly allows the jury to consider that no, William did not personally want to have contact with Reed to set up the meeting. But it leaves the state open to say, okay, maybe he didn't want to do that. But he was more than happy to volunteer and say, hey, use my phone. Becoming an integral part of the plan. When, of course, defense counsel and defendant's argument is that no, this didn't happen at all. He was completely disassociated from the planning. And so had defense counsel come up with an answer to the state's argument that he volunteered his phone, it could have rebutted this argument that the state is making that William was really involved in the planning. But just by the fact that he had the record, the phone call or whomever used the phone call, couldn't he use the argument that maybe the guy said, give me your phone. Forced him to turn over the phone? Sure. Or another example is that we know at 212 p.m. is when the phone call was made. We know that Davis came over to William's house in the afternoon that same day. We also know that William left Davis alone for a while in the house. He could have picked up the phone then. In the same sense that the state had the opportunity to make up a story. Absolutely. I mean, his job is to respond to the state's arguments that they consider inferences from the fact. It's another inference from the fact that Davis used the phone while William was out of the room. We know that he left him alone for a while. And again, we know from the record that defense counsel said that he didn't bother to read the records, didn't bother to read the stipulation based on the state's, what he called a misrepresentation of what the stipulation included. Defense counsel represented that the state said there was no new information and that's why he signed. Completely unprofessional for really both sides if both statements are true. Could you address the issue of the separate jury verdict forms? Sure. Separate jury verdict forms should have been tendered by defense counsel, were not tendered by defense counsel. The trial court ended up entering a sentence on the felony count and also entered sentence on the armed robbery. And it's our contention that the armed robbery conviction needs to be vacated in the felony murder. If his conviction is affirmed at all, the felony murder count stays, the armed robbery conviction gets vacated. And it's simply because the trial court does have the discretion, as he, as the trial court noted in sentencing, he does have the discretion to enter judgment on the most serious count for which the evidence supports. Which in this case, as all parties have argued along the way, is felony murder. So in that sense, if this court decides to affirm the conviction, then we ask that the armed robbery conviction be vacated. Well, I want you to talk a little bit more about your theory that the failure to proffer separate jury verdict forms was a great example of something. Can you address that? Sure. We know from several, many, many cases that the one good count rule states that typically when there's a general verdict returned, it's presumed to be guilty on the most serious count for which the evidence supports. In several of the cases that are out there, that tends to be intentional murder. Here we don't have that case, but it still leaves William open to the possibility of consecutive sentences. And for that reason, defense counsel, again, all he had to do was simply ask, and we know that had he asked, the trial court would have been required to provide the instructions, or excuse me, the separate verdict forms, and he didn't do that. And he left his client open to a much larger sentence that really wasn't warranted by the fact. Now here he happened to luck out, and the trial court did recognize that the facts only supported felony murder, did recognize that he did have, the trial court had discretion to enter judgment on the felony count. And so again, we would ask that if this court confirms the conviction at all, that we vacate the armed robbery conviction. But, again, defense counsel needs to be on top of his game, needs to know how to strategize to the benefit of his client, and clearly did not in this case. You kind of suggested in your argument that the trial court should have sua sponte given separate jury verdict forms. Are you sticking with that? I'm certainly leaving it open to a suggestion. I mean, the trial court seemed to... The trial court was required to sua sponte issue jury verdict forms. It's not requested by the parties? Well, we know that's not the current state of the law. But our argument is that something has to happen. You can't have, I mean, according to the state's argument, basically, if defense counsel doesn't ask for it... We're an appellate court, so the Supreme Court pretty much tells us what to do. And the Supreme Court hasn't said that the trial court has the, not only the authority, but is required to sua sponte, comb through the evidence and decide which jury verdict forms should be proffered if the lawyers don't offer them. You agree with that? I agree with that. That is the state of the law. Absolutely. Yep. And, you know, it just so happens that this trial court was more on top of it than defense counsel and knew that he had the discretion to enter the judgment on a specific count, which he did. And the facts do indeed support, if any conviction at all. One last point very quickly. One other example of where the prosecutor abandoned his obligation to see that justice was done and instead focused on the win is the demonization of a 22-year-old kid who didn't want to participate in the botched robbery. The robbery went tragically wrong, but that does not make William a monster. The state's characterization of him as a coward with a face of evil was improper, unwarranted, and prejudicial. It's the stuff of TV dramas. There's no basis for it here. There were objections, and the court sustained the objections, didn't it? Several objections were sustained, but there were several mentions of coward, only one of which was sustained. And, unfortunately, there was no objection to the face of evil, looking at the face of evil. Didn't defense counsel bring up the word evil in his statement? No, not in his opening statement. He did with respect to co-defendant Davis. And the state responds that that opened the door, but certainly it did not because, again, we're arguing to William's jury. You can say almost anything you want about co-defendant Davis because William's jury is not charged with determining his guilt or innocence. However, William, of course, that's their sole responsibility. And so to completely dehumanize him and call him a coward with a face of evil serves no other purpose than to try to get them to convict on the basis of emotion, which, as we know, is completely improper and really unwarranted by the facts here. Before you sit down, I would like you to address the state's issue that they raised regarding the sentencing. The state contends that the trial court improperly imposed concurrent sentences, and they wanted it to be consecutive. So since, you know, when the state gets up here, they may talk about it, I'd like to hear your response or your comments about that issue. The sole issue that the state has raised, as opposed to just responding to yours. Sure. Well, I mean, notably, and I think we need to keep this in mind, the state never argues, even on appeal, that the facts fit anything other than felony murder. Instead, they just sort of throw this blanket rule of the one good count out and sort of hope it sticks. But we know that the one good count is not just that a general verdict requires judgment to be entered on the most serious type of murder. It's the most serious type of murder for which the facts support. Let me ask you that question, because the judge, he specifically sentenced him on the felony murder count of five. Did he actually say, and I'm doing this because the evidence only supports felony murder and not the other? Absolutely. In fact, there's a whole exchange between the state where the state repeatedly asks, no, we think you're wrong, it has to be mandatory consecutive. And the jury says, no, I know that defense counsel did not request separate verdict forms, but I think it's within my discretion to enter it on the felony murder, because we know that's what it is. The judge said that. Oh, I'm sorry, excuse me. But he said it was his discretionary. Did he say it was based on the evidence that was heard in this trial? Yes, I think, and certainly his comments and everyone's comments throughout trial shows that this, everyone is on the same page in terms of this was nothing more than felony murder. There's no talk of any intent for it to be otherwise. And so, you know, the state's, I think, hoping that this court expands the one good count rule to, basically, eliminate that second part of the holding, which is the most serious for which the evidence supports. And their argument is more that the judgment should be entered on the most serious period, which we know that that's contrary to the Illinois Supreme Court's statement in Davis and Cardona. It's really what the facts support. The state's, excuse me, the trial court's comments support that it's just felony murder. Everyone argues that it's felony murder. Even the state on appeal does not argue otherwise. Again, if this conviction is affirmed at all, it's really under the felony murder and the armed robbery conviction gets vacated. Thank you, counsel. Thank you very much. May it please the court. Counsel, defendant in this case received. Oh, sure. I'm sorry. My name is, my name is Claire Wessel-Connelly. I'm an assistant state's attorney and I represent the people of the state of Illinois in this case. The defendant in this case received a fair trial. Defendant's claim that his trial counsel was ineffective has no merit where the evidence did not support the inclusion of withdrawal instruction. But the defendant fails to recognize the defendant in this case has the burden of showing that he communicated his intent to withdraw to his co-defendants. By words or by actions. In this case, the actions that he displayed do not show that he withdrew from his participation in this offense. The defendant in this case, he supplied the victim's name to his co-defendant, knowing that his co-defendant wanted to rob someone. Defendant knew that his co-defendant, Dorwan Davis, was armed with a .45 caliber weapon. And he even checked out the weapon to see that there was a bullet inside the chamber. Defendant didn't hesitate into getting into his co-defendant, Dorwan Davis's car, knowing that they were going there to rob the victim in this case. Defendant assumed his role of acting as a diversion in this case. Defendant agreed to wait in the car while his co-defendant, Dorwan Davis, robbed the victim. Then he went up to him, gave him the $10 as they had prearranged, and then walked away. Defendant in this case, as your honors pointed out, continued his associations with his co-defendant. The defendant and Dorwan Davis ran away after the shooting. Defendant carrying a shoebox that he took from, that was taken from the victim. They went back into the getaway car, they drove away. The defendant took the gun and the shoebox and attempted to hide the shoebox and the gun in the trunk of the car. All of these actions show the defendant's willingness to fully participate in this armed robbery and eventual murder. Defense counsel chose not to choose this defense strategy because he knew that he was not going to win. The jury was not going to be convinced by withdrawal instruction. And despite defense counsel's argument that the trial counsel in this case, the defense counsel, argued the withdrawal instruction, he did not argue withdrawal. When he mentions, what he mentions in his closing argument, he's attempting to minimize the defendant's accountability. He's not arguing withdrawal in this case. The defendant in his own video statement tried to minimize his own involvement in this offense. It doesn't constitute enough evidence to support a withdrawal instruction. Counsel, how much is enough evidence to support a withdrawal instruction? Counsel suggests it's fairly minimal. It's a slight evidence. It's a very low burden. I understand that. But in this case, there's no evidence to support it. He relies in his reply brief on the, that he needed, that the defendant needed to provide physical assistance to the co-defendant. Because the co-defendant had been shot three weeks before then. That's a theory that they're throwing out there that was not thrown out during trial. That there's no evidence to support that he had to, that part of his role was to provide that physical assistance. The only reason that evidence was introduced was during the videotaped statement of the defendant in which the defendant said, I knew that the co-defendant had a gun because he had been shot in front of my house three weeks before this offense. There's nothing about him providing any type of physical assistance during the armed robbery. That's a story that's coming up now. Was there ever any testimony that maybe he was paralyzed by fear or knew the guy had a gun, that's why he couldn't withdraw? No. There's no evidence to support any type of evidence regarding that. And if you were to look at the evidence, I wouldn't think that that would support any type of coercive actions by the co-defendant in this case. Regarding the phone records, the best way to review this phone records is to look at how the assistant state's attorney explained what happened. And these are the assistant state's attorney's words. Initially when I sent out the subpoena for the phone records for all the three defendants, I got phone records for Latrice Burns, I got phone records for William Kenlo. When they sent me, what they sent me for William Kenlo ended March 16th, the day before the murder. So I asked defense attorneys, will you guys stick to these things, I'm going to try to get the phone records for the 17th. Because when I was preparing my case a couple months ago, I noticed that there was an error. So then I tried to get in touch with Nextel, which was the cellular provider. Nextel was able to send me Exhibit 51, which I sent by e-mail to Mr. Granich several days before Monday, along with a proposed stipulation. I gave him the hard copy of this phone record on Monday. And what Mr. Granich asked me was, I am not stipulating that my guy called him. And what I said was, I am not saying your guy called him, I'm saying your guy's phone called him. The theory of our prosecution, and it was supported by the defendant's own words in the videotaped statement, is that he didn't make the phone call to the victim. The defendant's phone was used, the co-defendant made the phone call. This is a very fact-rich case. Did the defendant actually acknowledge that his phone was used to make the call to the shoeman? Yes, he did. If you were to reread his videotaped statement, he acknowledged that he used, that his phone was used. The assistant state's attorney asked him, did you make the phone call? And he said, no, he didn't. But then he went on to explain. So yes, the phone was, his phone was used during this. And you have to understand, defense counsels in this case, they already had the phone records from all the other co-defendants and from the victim. So this was not surprise for the defense counsel. The victim's phone record showed, already showed that there was a phone call between the victim and the shoeman. He was not surprised. He was not prejudiced by any of this. He was not misled during this in any way. So any claim that his counsel was ineffective really has no merit. Well, on that issue, but can we move on to their issue of the jury verdict form? Jury verdict form, correct. The trial counsel's decision in this case not to request separate verdict forms for first-degree murder is related to trial strategy. This Court should follow the decisions in Brayboy. What trial strategy could there be that would dictate not to have separate jury verdict forms? Tell me, just hypothetically, I was trying to figure that out and I'm having some difficulty. In Calhoun, which I cite to, what happens is defense counsel could have been concerned that the jury were given separate verdict forms. It would have been easier for the jury to have found him guilty of felony murder because that would have been a highlight. You know, you could have that separate when the facts of the armed robbery in this case were overwhelming. His participation and the fact that an armed robbery occurred, the facts were overwhelming in this case. And it would permit the jury to focus on the felony murder jury verdict form as opposed to any of the other verdict forms in this case. And that, in Calhoun, has been found to constitute trial strategy and, therefore, it does not constitute ineffective assistance of counsel. As it applies to this case, part of the strategy was essentially saying, no, he didn't do any of this. He basically was just along for the ride. So that would necessarily constitute felony murder. So, I mean, defense counsel would have known that. I don't understand. I'm not understanding the argument on strategy. Make it again. Let me see if I can grasp it. Okay. Okay. When there's overwhelming evidence regarding the underlying offense, and in this case it's the armed robbery, the defendant's participation, the evidence regarding the defendant's participation in the armed robbery was overwhelming. The jury found him guilty of armed robbery. I don't think there should be any question as to the guilt of the defendant in the armed robbery. When you have overwhelming evidence on the underlying offense, what happens is that you're going to have that separate verdict there. It's going to be easier for the jury to have found him guilty of felony murder when the evidence is overwhelming for the underlying offense than it is if you put it all together. So it constitutes trial strategy to not make it basically easier for the jury to have found him guilty of felony murder. So basically you're saying that by some stroke of luck, perhaps they would have focused on knowing or intentional murder and say, well, elements just aren't there for that, so he's not guilty of anything other than he's not guilty of any of the murders. When you have a general verdict form, you can find, the jury can find him under the intentional, the knowing, or the felony. The thought is that when you have the felony murder there out there separate, it's easier for the jury to find him guilty of the felony murder when the evidence regarding the underlying offense is overwhelming. And if you put it all together, you don't highlight, I guess the best word to describe it is you don't highlight that aspect of the murder charge to the jury. So is it the argument then that it's better for them to find him guilty of one of the other murders and not felony murder? No, no, no, no, no, no, no, no. I don't think, I don't, you're right. The argument is so esoteric that it's going right over my head. Right, but I, and I ask you to just look at the decision in Calhoun, because that's essentially what they said in Calhoun. But I. So we do read the cases that you cite to us. Right, right, I understand. As far as the, finding the defendant guilty of the felony murder for the trial court, if you look at what the trial court actually said when he decided to sentence the defendant to the felony murder, as opposed to what he should have done, which is the most important thing. I think that's a serious offense, which is the intentional murder. Let me ask you a hypothetical question on the verdict form. Assuming that, you know, the court's not required to sua sponte issue these jury verdict forms, which your opponent would like this court to extend the court's obligation to, and assuming that such forms, that we find that those forms were necessary or appropriate, and that they were not proffered by defense counsel, is that, does that constitute a serious offense? Is that an effective assistance of counsel if we find from the facts and from the established case law that, you know, separate jury verdict forms should have been issued here, and they weren't? Is that an effective assistance of counsel? I'm not quite following what the question is, but, I mean, basically, what the decision in Smith found was that it's, it constitutes error if defense counsel is not required to issue jury verdict forms. And that's what defense counsel requested. Defense counsel didn't request it in this case. Well, that's my question. Would it be an effective assistance of counsel for defense counsel not to have requested it if we determined, in looking at these facts, this record, that separate jury verdict forms should have been proffered? Would that then be an effective assistance of counsel? Would you concede that that would be an effective assistance of counsel? I don't think the defendant has raised why, I don't think he has asked why, answered the question why separate verdict forms should have been given in this case. Again, I But I'm not asking, I'm going to ask her too, but I'm asking you right now. I guess the bottom line is that, is that separate, separate verdict forms were not merited in this case. And it's clearly been repeatedly held that it's not, does not constitute an effective assistance of counsel. It's a very lawyer-like answer. I apologize if I'm having difficulty answering your question because I'm not exactly following the line. Could you address the issue, moving on from that question, could you address the question of the state's behavior. The state's behavior in this case. What should have been done in this case is that the trial court should have sentenced him on the most serious offense in this case. When there's a general verdict, the consensus is that you sentence him on the most serious offense. In this case, it would have been intentional murder. He was also found guilty of armed robbery. That merits a consecutive sentence in this case. And what I'd like to point out is defense counsel suggests that the trial court found that there was, that based his decision on giving, on sentencing him to felony murder to, based on the lack of evidence regarding intentional annoying. And I'd like to read what the trial court read, read, said at sentencing. Counts one and three will merge. So I want that clear on the sentencing order that he is being sentenced on count five. One and three to merge into count five, which is sentencing him on the felony murder. And I know there were, I know defense counsel did not specifically offer up felony murder during instructions as to the battle case. As in the battle case, but I am not sure that this, that that is the requirement. In either case, it appears, obviously the case is going up on the appeal and the appellate court will determine that. However, under the battle case of, I think that is within my discretion, based on that case, as there was discussion in the trial about whether or not the state would go up, just go on felony murder. The judge decided to sentence him on the felony murder in the case, not because he found there was a lack of evidence regarding intentional annoying murder, he found that he was concerned about this decision in battle. That came after the decision, Smith, that had to do with the finding of an abuse of discretion when defense counsel specifically requests separate verdict forms. He didn't request separate verdict forms. It's not in the same arena as battle, but the trial court in this case was concerned about what would happen in this arena. The judge decided to sentence him on the intentional murder count. I'm going to ask, what discretion does the court have, though? Even if it doesn't give the explanation why I'm sentencing him on the felony murder, because that's what the facts are stating. Does he have any discretion not to sentence him on the intentional murder count?  I have never seen a case, and nor does defense counsel cite to a case, which gives the trial court or this court the authority to override a jury's verdict in this case. When there's a general verdict, the case law is clear. When there's a general verdict, you sentence him on the most serious offense. And in this case, it's the intentional murder. And he said one and three merge into five, right? What happened to count two and four? To be honest with you, I don't recall what count two and four was. I don't know. But he merges one and three into five, and then he sentences on five. Right. So the correct sentence in this case is he should have sentenced him on the intentional murder, given him consecutive time to the armed robbery, because it's mandatory. How about another argument? How about the correct thing to do would be to sentence him as to felony murder, and the armed robbery merges? Correct. If truly, if it would have been, if he would have done it, he sort of messed it up two times. But he should have sentenced him to the felony murder, and then the armed robbery should have merged into the felony murder. But he didn't do that either. Yeah, but that's what he should have done. But he did have the option to do it. But that's not what you're saying. But we're not saying that he even had that option. What we're saying is he should have been found guilty on the intentional murder, and he should have sentenced him on the armed robbery, and it should have been consecutive time. That was the appropriate sentence in this case. Therefore, at this point, people respectfully request that Your Honors affirm the defendant's conviction in this case, and remand this case back for a new sentencing hearing, and order the trial court to enter judgment on the intentional first degree murder count, and order that the armed robbery sentence in this case be served consecutively to the first degree murder sentence. Thank you. A brief rebuttal, please. Thank you. Again, this is Emily Wood for the Office of the State Appellate Defender. Briefly, actually, we did cite a case that said that the trial court has discretion to enter a sentence on the lesser felony murder. It's People v. Ruiz, first district case from 2003. The trial court entered sentence on the felony murder. The appellate court affirmed, said, yep, that's what the facts support. You're fine. And again, as predicted in my opening argument, the state forgets that very critical holding, the part of the holding that says, when there's, and I can read it from People v. Cardona, a general finding of guilty is presumed to be based on any good count in the indictment to which the proof is applicable. So if the state says that the sentence should be on the intentional, they do not argue that the facts support it. At no point have they argued that the facts support anything but felony murder. Again, if the state has their way, basically, as Your Honor pointed out, they're trying to have their cake and eat it, too. I mean, if defense counsel is not ineffective for failing to request the jury instructions and trial court's hands are tied, you've done away with felony murder. And that's not what the Illinois Supreme Court has allowed for. The Supreme Court has allowed for the trial court to do exactly what he did, which was enter the judgment on the most severe form of murder that he found the proof to be applicable. Again, it's felony murder, if anything. We would ask this court to, first of all, reverse his convictions for a new trial, but in the alternative, affirm the felony murder and vacate the armed robbery convictions. And again, without the court stating, this is the reason I'm sentencing on the felony murder, we're to kind of assume that those are the machinations that were going on in the court's head. Absolutely, especially in the context of the discussion of the battle case, which was, although ultimately reversed in light of People v. Smith, it was definitely a felony murder case. And so it was on everyone's mind. Everyone was arguing felony murder. There's absolutely no reason from the evidence that the state should be able to have an intentional murder conviction out of this. So thank you very much. Thank you very much.